# UNITED STATES DISTRICT COURT
## For The
## Western District of North Carolina
## Asheville Division

| | | |
|---|---|---|
| Joy Ponder, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No: 1:20-cv-00330-MR-WCM |
| City of Asheville, and Scott | ) | |
| Burnette, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Now comes Joy Ponder, Plaintiff herein, and files this First Amended Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15.

## JURISDICTION

1.      This court has jurisdiction over the federal cause of action brought herein pursuant to 42 U.S.C. § 2000e-5.

2.      The court has jurisdiction over the State law claims brought herein in that the events giving rise to these causes of action are the same as those that gave rise to the federal cause of action, and the nexus of operative facts are so related to claims in this action in which this Court has original jurisdiction that they form part of the same case or controversy, and this Court has supplemental jurisdiction over such State law claims pursuant to 28 U.S.C. § 1367.

1

3.    Plaintiff filed a Charge of Employment Discrimination against the Defendant with the United States Equal Employment Opportunity Commission ("EEOC") on or about November 27, 2019 for discrimination on the basis of sex in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., which Charge was denoted by the EEOC as Charge No. 430-2020-00598.

4.    On August 20, 2020 the EEOC mailed a Notice of Rights to Plaintiff in Charge No. 430-2020-00598.

5.    Plaintiff, having exhausted her administrative remedies, now brings this civil action within 90 days of her receipt of the EEOC Notice of Rights listed above.

## PARTIES

6.    Plaintiff, Joy Ponder (herein "Ponder"), is a female citizen of the State of North Carolina, a resident of Madison County and at all times relevant to this complaint, an employee of the Defendant, City of Asheville.

7.    Plaintiff is an "employee" as that term is defined in 42 U.S.C. § 2000e.

8.    Defendant, City of Asheville (herein "City") is a North Carolina municipality located in Buncombe County.  The City operates the Asheville Fire Department (herein "Department" or "AFD") as a division of the City.

9.    Defendant, City of Asheville, is an "employer" as that term is defined in 42 U.S.C. § 2000e.

10.    Defendant Scott Burnette, sued here in his individual capacity, is and was at all times relevant to this complaint, the Chief of the Asheville Fire Department.

## FACTS

11.    Prior to her medical retirement on June 1, 2020, Joy Ponder was a career employee of the City of Asheville Fire Department.

12.    Ponder had been an employee of the Asheville Fire Department since 1998.

13.    During Ponder's 21-year career with the Asheville Fire Department, Ponder has held, successively, the positions of Health and Safety Officer, Firefighter, Senior Firefighter, Lieutenant, Captain, and Battalion Chief.

14.    On August 31, 2014 Ponder was promoted to the position of Division Chief and assigned to command and supervise the Department's A-Shift.

15.    At no time in her 21-year career with the Asheville Fire Department did Ponder receive disciplinary action of any kind.

16.    With the exception of the false and discriminatory letter complained of in paragraph nos. 107-112 below, at no time in her 21-year career with the Asheville Fire Department had Ponder been given any documentation of unsatisfactory job performance from any supervisor.

17.    Throughout her 21-year career with the Asheville Fire Department, Ponder's Job Performance evaluations were consistently Outstanding or Exemplary, and she routinely met and exceeded expectations set forth in such Job Performance evaluations by the City of Asheville.

18.    In 2017, Chief Ponder was named as AFD's Most Outstanding Employee.

19.     On Wednesday, June 12, 2019 Ponder was asked by Asheville Fire Department Chief Scott Burnette to meet with him and Deputy Chief Budzinski privately.

20.     At that meeting, Ponder was told that she was being involuntarily transferred out of the position of the Division Chief in charge of A-Shift.

21.     The Division Chief position, which Ponder had held for the past 5 years, is a "line" or operational position overseeing Fire Suppression activities.

22.     In that position, Ponder supervised the daily operations of all 12 Fire Stations across the City, with approximately 75 firefighters under her overall supervision.

23.     In that position, three Battalion Chiefs reported directly to Ponder.

24.     A Division Chief is the highest-ranking officer directly responsible for fire suppression in the Asheville Fire Department.

25.     Ponder was the first female in the history of the Asheville Fire Department to hold the position of Division Chief.

26.     To date, Ponder remains the only female Division Chief to have served in the Asheville Fire Department actively and routinely supervising firefighters and fire crews in a fire suppression role.

27.     At the time of her transfer, Ponder was told she was being transferred to a purely administrative position within the Chief's Office where she would

work 9-5, Monday-Friday, and that she would be responsible for preparing the "Strategic Plan" for the Department.

28.    Ponder was not told what resources she would have to complete the plan nor the time frame in which it was to be completed.

29.    In her new position, Ponder did not supervise any employees nor have any supervisory authority in general - all of Ponder's supervisory and operational responsibilities as a Division Chief were removed from her.

30.    Ponder was transferred to a "desk" position, and removed from a "line" or "operational" position involved in the management and supervision of fire suppression operations and other emergency operations such as management of fires, rescues, hazmat, emergency medical, and other emergency related events.

31.    In her new position, Ponder was told she would be under Chief Burnette's "close supervision". This had not been the case while she served as the Division Chief of A-Shift. In that position, and consistent with the specifications of a Division Chief position, Ponder exercised a high level of job related autonomy. That autonomy was removed from her as a result of the transfer.

32.    Prior to the transfer, Ponder was not given a meaningful opportunity to agree or disagree with this transfer or its timing.

33.     Ponder was told by Chief Burnette that how she "handled" this transfer and how she "presented" it to the rest of the Department would determine her "future with the Department."

34.     Ponder was instructed to tell all Departmental personnel, if asked, that she had agreed to the transfer, which was not true.  Ponder did not agree with this transfer.

35.     Following the meeting with Ponder where she was informed of this transfer, Deputy Chief Budzinski unilaterally announced at the next staff meeting that Ponder had "graciously volunteered" to be reassigned to days and lead the development of the Strategic Plan.

36.     Chief Budzinski's statement was untrue and was known to be untrue by Budzinski at the time he made it to the AFD staff.

37.     This transfer was done without any prior notice or discussion with Ponder about the transfer, the reason for the transfer, the need for the transfer or the adverse effects of this transfer on Ponder's professional and personal life.

38.     After having served on a shift schedule for the majority of her career in the Asheville Fire Department, all of Ponder's personal life was structured around such a schedule.

39.     Ponder was told the transfer was to be effective June 17th, which gave her no time to plan or make any necessary adjustments in her schedule and routine for either herself or her family.

40.    The position of Division Chief is a senior level position within the Asheville Fire Department.  Shift Division Chiefs, such as Ponder, work in fire suppression to oversee all the fire stations in the city, including but not limited to emergency scene work, personnel issues, training and safety, and public outreach and education.

41.    The position into which Ponder was transferred had no connection to emergency scene work or supervision.

42.    In her new position, Ponder did not exercise command authority over any Shift within the Department or over any recognized Division of the Department as is usual and customary for the position of Division Chief.

43.    The position into which Ponder was transferred had none of the characteristics, duties, responsibilities or requirements of a Division Chief position in fire suppression, nor was it anything that she had specialized training or experience in.

44.    Ponder had advanced experience and training in fire suppression activities.  She was the first female member of the AFD to complete the National Fire Academy's Executive Fire Officer Program (4 Years), and the first AFD member to complete the International Association of Fire Chief's Fire Service Executive Development Institute (2 years).

45.    Ponder had been recognized and chosen for the above programs due to her strong leadership skills and regional reputation for excellence.

46.    At the time of Ponder's transfer, there was no open Division Chief Position, as shown on the Department's organizational chart, into which she was transferred.

47.    Ponder's A-Shift position had to be filled initially by someone moved up from a lower rank and operating "out-of-class." This change caused the Asheville Fire Department to incur additional costs, including, but not limited to, otherwise unnecessary overtime pay.

48.    Prior to this action by Chief Burnette, an auditor reviewing the AFD payroll practices had recommended a reduction in out-of-class pay assignments.

49.    Ponder's new position did not appear as a position on the Department's organizational chart.

50.    To the extent the City alleges that Ponder's transfer created a new Division Chief position within the Department, no such new Division Chief position was in fact created nor was or had any such new position been approved by the City's Human Resource Office or the Office of the City Manager or funded in the budget.

51.    In terms of Ponder's purported new job duties, the preparation of a Strategic Plan for the Department, it was and is the usual and customary practice of the Department to solicit interest for special assignments like this and to choose from among the interested candidates.

8

52.     In the case of the preparation of the new Strategic Plan assigned to Ponder upon her transfer, another qualified employee had previously volunteered for this position and thus there was no need to assign Ponder to this position.

53.     Additionally, several "administrative Chiefs" were already on the day shift and could have managed the project at no additional cost.

54.     Ponder's assignment to this duty was not consistent with the normal policies and previous practices of the Department as those related to the assignment of an employee to such administrative duties.

55.     As stated above, Ponder was transferred from a Shift position to a Day position.

56.     Except in connection with disciplinary action, it is not the customary practice or policy of the Asheville Fire Department to transfer an officer off Shift work to Days without the consent of the officer.

57.     A pay supplement is rountinely offered with the transfer to the Day shift to encourage an officer or officers to agree to the schedule change.  This was not done in the case of Ponder.

58.     Ponder's transfer by Chief Burnette followed none of the normal previous practices and policies of the Department in such matters.

59.     Ponder was replaced in the command and supervision of A-Shift position by a male officer with less experience than Ponder.

60.     This involuntary and adverse transfer was the most recent and the culmination of a series of harassing, hostile and discriminatory acts that had been directed at Ponder by Chief Burnette.

61.      Ponder had previously been denied the ability and privilege to wear her Asheville Fire Department Uniform when testifying on a firefighter health and wellness issue before a committee of the North Carolina General Assembly.

62.     This ability and privilege had previously been routinely allowed to male officers of the Department, and was only changed after Ponder became a Division Chief and attempted to exercise this privilege.

63.     During 2017 and 2018 all front line fire suppression Staff vehicles were to be replaced with new pick-up trucks. The goal was to remove exposure to possible carcinogens from firefighter gear that might be transmitted throughout an SUV type vehicle where the equipment is kept inside the passenger compartment area following its use on a fire site.

64.     Ponder's vehicle was the only front line fire suppression vehicle that was not replaced.  All male co-workers who had assigned vehicles received the new pick-up style vehicles.

65.      Although additional new pick-up style vehicles were available to replace Ponder's staff vehicle, these were assigned to other male, non-front line and/or non-fire suppression officers in positions with much less potential carcinogen exposure.

66.     In 2017 Ponder had been diagnosed with Breast Cancer and had undergone extensive treatment for her condition.  Defendants were well aware of Ponder's status as a cancer patient and survivor.

67.     Despite this, as set out above, Defendants did not assign a safer pick-up style vehicle to Ponder for her use.

68.     Ponder's male replacement as Division Chief for Shift A was assigned a safer pick-up style vehicle.

69.     In 2018, Ponder's desk was needlessly taken from her and was replaced by an older, less desirable desk that had another male employee's name on it.  The more desirable desk was reassigned to a male officer of lower seniority.

70.     Ponder helped develop curriculum with City Human Resource personnel for the Department's "Chief Academy" Program.

71.     Having assisted in the development of the Program, Ponder then enrolled in and completed the initial two courses in the program.  However, after predominantly male Asheville Fire Department staff redesigned the program, Ponder attempted to re-enter the program and was told that her spot had been given away to a male employee.

72.     Ponder attended courses anyway and remained on the roster.   Ponder completed the required courses but was not issued a certificate of completion.  Ponder was told that she was not registered and the City had not paid her tuition.

73.     Successful completion of this course is required for future promotional advancement within the Asheville Fire Department.

74.     Prior to her promotion to the Division Chief position, Ponder was denied the opportunity for an "out–of–class" assignment opportunity up to an acting Division Chief position, which was given to a male, Chris Budzinski, who had less seniority and who, at that time, was ranked lower on the promotional list than Ponder.

75.     Budzinski was later promoted to Deputy Chief from this acting Division Chief position by Chief Burnette.  Such a promotion would not have been likely for Budzinski had he not been previously awarded the the out-of-class assignment to an acting Division Chief position in preference to Ponder as set out above.

76.     In 2019, Ponder was stripped by Defendants without justification of her duties involving the Live Fire Portion of the AFD's Lieutenant Testing Process, which for several years, along with Division Chief Mike Clark, Ponder had successfully organized, set up and served as the Incident Commander.

77.     Ponder's Lieutenant Testing duties were given to a less senior, lower ranking male officer.

78.     Ponder had similarly been stripped by Defendants without justification of her role in Health and Safety matters within the Department, despite the fact that she is recognized within Department and regionally as an experienced leader in these areas.

79.     These Health and Safety duties were subsequently re-assigned to a male employee with less experience in these issues than Ponder.

80.     In 2019, Ponder and AFD Training Officer Chris Johnson worked with Dr. Evelyn Chiang and the University of North Carolina Asheville to conduct a research study involving PTSD among firefighters.  This study was completed on a voluntary

basis with firefighters at AFD.  This peer reviewed research study was published in 2020 in the *Journal of Trauma and Loss*.

81.     Ponder was repeatedly questioned and aggressively challenged in regards to the 2020 study by Defendant Burnette while officer Chris Johnson, the male co-author who had participated equally, was never questioned or challenged concerning the Study.

82.     In 2016, Ponder had collaborated with Dr. Evelyn Chiang to conduct a research study with AFD volunteers which was published in the peer reviewed Journal of Occupational and Environmental Medicine.

83.     Despite the fact that both of these studies were published in respected peer reviewed medical and occupational journals, Defendant Burnette refused to recognize, within the Department, the City or within the profession generally, Ponder's role in these important studies.

84.     Burnette routinely sends out all-staff notifications of, and public congratulations to, male officers who engage in any such firefighter health and safety related efforts.

85.     In addition to the above actions, Defendant Burnette consistently treated Ponder in a personally demeaning, hostile and harassing manner.

86.     Defendant Burnette's behavior regularly included yelling at Ponder, forcing her into meetings either alone or with only Deputy Chief Budzinski present where he and/or Budzinski would berate her and attempt to intimidate her, and other attempts to intimidate or harass Ponder.

87.     On one occasion, Defendant Burnette waited for Ponder in a darkened parking garage where he suddenly approached her and begin speaking harshly to her.

88.     Another fire officer who happened to witness this event later expressed concern for her well-being due to this event.

89.     Defendant Burnette did not treat male employees in this same adverse fashion with the same intensity or frequency.

90.     Following her involuntary transfer, Ponder took FMLA leave due to stress caused her by all of the adverse and discriminatory treatment by Defendants set out above.

91.     Following her return from FMLA, Ponder was fearful and afraid to leave her office area due to the unpredictable and irrational behavior of Defendant Burnette toward her.  Ponder would telephone other employees to meet her before making a trip to the copier or restroom in an attempt to avoid being confronted alone by Defendant Burnette.

92.     Ponder was moved from a shared office in 2019 in which she had some sense of safety and security to a single office directly across the hall from Defendant Burnette and Budzinski when she returned from her FMLA leave in December 2019.

93.     During 2019 Ponder filed two internal grievances with the City of Asheville Human Resources Department against Defendant Burnette and the Department due to these hostile and harassing actions.

94.     In terms of responding to each of these grievances, the Defendants each repeatedly failed to meet their own deadlines for processing the grievances.

95.     In both cases the Defendants failed and refused to provide any relief for Ponder, indicating that there was no evidence of hostile, adverse or inappropriate conduct by Defendant Burnette or others.

96.     Such evidence of hostile, adverse and/or inappropriate conduct by Defendant Burnette and others with regard to Ponder did clearly exist.

97.     Because of the pending grievances and the continued hostile actions against her, upon her return to work from FMLA in late 2019, Ponder filed a request with City of Asheville Human Resources Department to be allowed to work anywhere in the city away from Brunette due to her continued concerns of harassment.

98.     This request was denied by the City and Ponder was required to continue to work in close physical proximity to and under the direct supervision of Defendant Burnette.

99.     All of Ponder's meetings with Defendant Burnette continued to be conducted, at his insistence, in private, often with little or no notice, with no transparency, and Ponder was never allowed to bring anyone with her, despite her requests to do so.

100.    Ponder experienced so much dread, stress and anxiety at the thought of going to work that she found it very difficult to return to work in late 2019

following her medical leave and found it very difficult to do work once she did return.

101. On October 20, 2019, Burnette disclosed Ponder's confidential Personnel information in an e-mail sent to all fire staff within the Asheville Fire Department. North Carolina State law protects the confidentiality of this information, and Defendant's Burnette's action releasing it was in violation of North Carolina State law.

102. Upon information and belief, during 2019, one or more female employees of the Asheville Fire Department also filed internal grievances or attempted to file charges of Employment Discrimination with the United States Equal Employment Opportunity Commission or otherwise voiced complaints concerning their treatment by Burnette and the Department as a whole under his leadership.

103. In 2019 the City assigned an outside investigator to review Ponder's, and possibly other complaints, filed against Burnette and the Department.

104. Upon information and belief, during this investigation, several female employees of the Department, and possibly male employees, reported the existence of hostile, harassing and other discriminatory conduct on the basis of sex within the Department.

105. The outside investigator assigned by the Defendant to perform this investigation was a male, retired Asheville Police Department Detective with

apparently no experience in investigating workplace discrimination allegations.

106. Ponder was never given a report of the outcome of any such investigation and is not aware of any substantive actions taken by the Defendant as a result this investigation.

107. At no time either prior to or at the time of her involuntary transfer was Ponder given or shown a letter dated June 17, 2019 which purports to be a letter from Defendant Burnette to Ponder alleging certain performance deficiencies on her part as a Division Chief.

108. This letter was first presented to Ponder as "evidence" to be included by the City at an Asheville Civil Service Board Hearing held on October 23, 2019.

109. None of the "Performance Observations" as set out in that letter nor any of the "goals" and "expectations" as described in that letter, had ever been presented to Ponder in any written format. This is despite the fact that such "observations," "goals" and "expectations" purport to cover a two-year period.

110. The letter of June 17, 2019 contains no specific factual incidents or allegations concerning Ponder's performance. Rather it is written in general, non-specific and vague terms. It utilizes a host of clichés and banalities.

111. The letter of June 17, 2019 is false as a matter of fact and completely inconsistent with the Corrective Action & Discipline Policy of the City of

Asheville that mandates a process of progressive discipline when dealing with alleged performance issues.

112.   This false letter is harmful to Ponder's professional standing and reputation and remains a part of Ponder's official personnel file.

113.   All of Defendant Burnette's wrongful actions as alleged herein were purportedly done by him in his role as Chief of the Defendant City of Asheville's Fire Department.

114.   All of Defendant Burnette's wrongful actions as alleged herein were approved of, ratified and adopted by the Defendant City of Asheville.

115.   The City of Asheville did nothing to protect Ponder from the wrongful actions of the Defendant Burnette, despite being aware of such actions and despite Ponder's repeated attempts to have the City of Asheville do so.

116.   All of Defendant Burnette's wrongful actions as alleged herein were done by him with the intention to discriminate against, harass, and harm Ponder.

117.   As set out above, Ponder experienced high levels of dread, stress and anxiety due to the Defendant's wrongful actions.  Due to these increased levels of dread, anxiety and stress imposed upon her by the Defendants, Ponder was unable to continue to work for the City of Asheville and had to take an early medical retirement.

118.   Ponder has suffered and will continue to suffer a significant decline in annual income due to the necessity to take an early medical retirement.

119. As to the state law claims pled herein, Defendants have waived immunity to civil suit and damages in this matter, to the extent any such immunities apply to a Defendant, in that such Defendant has purchased, is covered by or has otherwise provided for liability insurance.

## FIRST CAUSE OF ACTION
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

120. Plaintiff realleges and incorporates herein all allegations set out in paragraphs 1 through 119 above.

121. Defendants have engaged in illegal discriminatory actions on the basis of Plaintiff's sex as alleged herein.

122. Defendants discriminatory and unlawful conduct has adversely affected Plaintiff in the terms, conditions, or privileges of her employment.

123. Defendants have harassed and subjected Plaintiff to a hostile work environment on the basis of her sex.

124. Defendants adverse, hostile and harassing actions against the Plaintiff on the basis of her sex have been severe and pervasive.

125. Defendants subjected Plaintiff to an adverse transfer and effective demotion on the basis of her sex.

126. Defendants actions as alleged herein violate the provisions of 42 U.S.C. § 2000e-2.

127. Due to Defendants unlawful actions as pled herein, Plaintiff has suffered loss of income, loss of and injury to her professional standing,

emotional pain and suffering, inconvenience, loss of enjoyment in life and mental distress and anguish.

## SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

128.    Plaintiff realleges all allegations set out in paragraphs 1 through 127 above.

129.    Defendants wrongful actions as pled herein were intentional or were done with a reckless disregard of the rights of Plaintiff, were outrageous and extreme in nature, were designed to harass, harm and subject Plaintiff to a hostile work environment, and were intended to and did inflict severe emotional and mental distress on the Plaintiff.

## THIRD CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

130.    Plaintiff realleges all allegations set out in paragraphs 1 through 127 above.

131.    Defendants owed a duty of care to Plaintiff as an employee of the City of Asheville not to act unlawfully against her or to subject her to harm.

132.    Defendant's actions as pled herein were in violation of each Defendant's duty of care to the Plaintiff, were negligent, and resulted in the infliction of severe emotional and mental distress on the Plaintiff.

WHEREFORE, the Plaintiff prays this Court to provide the following relief:

1.     Award, pursuant to 42 U.S.C. § 2000e-1, *et seq,.* a judgment to Plaintiff in an amount sufficient to compensate Plaintiff for all wage related losses she has and will suffer due to the  Defendants' discriminatory actions which necessitated Plaintiff taking an early medical retirement;

2.     Award, pursuant to 42 U.S.C. §§1981a and 2000e-5, a judgment to the Plaintiff in an amount sufficient to compensate the Plaintiff for all loss of and injury to her professional standing, emotional pain and suffering, inconvenience, loss of enjoyment in life, mental distress and anguish, and all other non-pecuniary losses pled herein in an amount up to $300,000.00;

3.     Award to the Plaintiff, pursuant to the law of the State of North Carolina, a judgment against Defendants, joint and severally, in an amount sufficient to compensate the Plaintiff for all damages incurred through the Defendants intentional infliction of emotion distress or, in the alternative, the Defendants negligent infliction of emotional distress, upon the Plaintiff, including but not limited to all wage related losses Plaintiff has and will suffer due to the necessity of Plaintiff taking an early medical retirement;

4.     Award to the Plaintiff all prejudgment and post judgment interest on all amounts so awarded as may be allowed by law;

5.     Award to the Plaintiff all reasonable attorney fees and costs in this action as may be allowed by law;

6.     Provide to Plaintiff a trial by jury on all issues herein;

7. Such other and further relief as the Court shall determine to be necessary and appropriate.

This the 5th day of February 2021.

*s/John C. Hunter*
John C. Hunter (N.C. State Bar No.: 13197)
Attorney at Law
One North Pack Square
Suite 421
Asheville, North Carolina 28801
Tel: (828) 281-1940
Email: johnhunter@jchlawfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has this day electronically filed the foregoing **FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following individual:

John B. Maddux
Eric P. Edgeton
City of Asheville
jmaddux@asheville.gov
eedgerton@asheville.gov

Dated this the 5th day of February 2021.

*s/John C. Hunter*
John C. Hunter
Attorney at Law