# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:20-cv-00330-MR

| | |
|---|---|
| JOY PONDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| CITY OF ASHEVILLE and ) | |
| SCOTT BURNETTE, individually, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the "Defendants' Motion in Limine to Exclude Expert Opinion and Testimony of John D. Rukavina." [Doc. 20].

## I. PROCEDURAL BACKGROUND

On November 17, 2020, the Plaintiff Joy Ponder ("Plaintiff") initiated this action against the City of Asheville. [Doc. 1]. On February 5, 2021, the Plaintiff filed an Amended Complaint adding Defendant Scott Burnette, the Fire Chief of the Asheville Fire Department ("AFD"), to this action. [Doc. 4]. In her Amended Complaint, the Plaintiff alleges that the Defendants discriminated against her on the basis of her sex when she was involuntarily

transferred from her role as a Division Chief supervising the AFD's A-Shift to an administrative role preparing the AFD's strategic plan and that the Defendants subjected the Plaintiff to a hostile work environment. [Id. at ¶¶ 120-127]. The Plaintiff asserts three causes of action related to her treatment at the AFD: (1) violation of Title VII of the Civil Rights Act, (2) intentional infliction of emotional distress, and (3) negligent infliction of emotional distress. [Id. at ¶¶ 120-132]. The Defendants argue that the Plaintiff was transferred because of numerous performance deficiencies and have moved for summary judgment on all of the Plaintiff's claims. [Doc. 18; Doc. 19 at 5]. The Court has addressed the Defendants' Motion for Summary Judgment in a separate Order.

On August 30, 2021, the Plaintiff designated John D. Rukavina as an expert in the management of municipal fire departments. [Doc. 20-1; see also Doc. 24 at 2]. On November 1, 2021, the Defendants moved to exclude the expert opinion and testimony of Mr. Rukavina. [Doc. 20].

## II. STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence permits a witness to provide expert testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or

data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "Federal Rule of Evidence 702 appoints trial judges as 'gatekeepers of expert testimony' to protect the judicial process from the 'potential pitfalls of junk science.'" Sardis v. Overhead Door Corp., 10 F.4th 268, 275 (4th Cir. 2021) (quoting in part United States v. Bonner, 648 F.3d 209, 215 (4th Cir. 2011)). In fulfilling this essential gatekeeping function, a trial court must "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)).

"[T]he test of reliability is flexible," and "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141-42, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). While the reliability of purely scientific expert testimony can be determined by examining its falsifiability, refutability, or testability, determining the reliability of experiential expert testimony that does not rely on the scientific method is "somewhat more opaque." United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007). However, "the district court must

3

nonetheless require an experiential witness to explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." Id. (internal citations and quotation marks omitted).

## III. DISCUSSION

Mr. Rukavina is the Director of Public Fire Safety Services, Inc., an executive consulting and teaching service. [Rukavina Report, Doc. 24-1 at 1]. Mr. Rukavina began his career in fire service as a firefighter in Roseville, Minnesota. [Id. at 5]. Throughout his career, he has also served as the Executive Assistant to the Fire Chief at the St. Paul, Minnesota Fire Department; the Fire Chief at the St. Joseph, Missouri Fire Department; the Interim City Manager of St. Joseph, Missouri; the Fire Chief at the Asheville, North Carolina Fire Department; and the Director of Public Safety in Wake County, North Carolina. [Id. at 1, 5]. Mr. Rukavina holds a law degree from the University of Minnesota, and he has attended numerous leadership training programs at the University of North Carolina School of Government, the John F. Kennedy School of Government at Harvard University, and the National Fire Academy. [Id. at 1]. Mr. Rukavina has also taught numerous continuing education courses related to leadership and municipal fire department management, and he has authored numerous publications on

4

those same topics. [Id. at 1-2, 6-8]. Collectively, Mr. Rukavina has over thirty years of experience as a firefighter, fire chief, and teacher. [Id. at 2].

In his report, Mr. Rukavina concludes that the Defendants effectively demoted the Plaintiff by transferring her into "what is the equivalent of a lower-ranking position than that of Division Chief." [Id.]. Mr. Rukavina explains that he reached this conclusion because the new position into which the Plaintiff was transferred did not have the same senior management responsibilities that she held in her previous position as a Division Chief supervising the department's A-Shift. [Id.]. Mr. Rukavina further concludes that "based on [his] 34 years of experience as a firefighter and [his] service as a fire chief and teacher, such a transfer is, if not affirmatively requested by the employee, a negative and adverse employment action in terms of both perception within a Fire Service and such a transfer's effect on a Fire Fighter's career in management." [Id.]. Mr. Rukavina opines that if such a transfer "is not being taken for disciplinary or other adverse reasons by management, the usual approach to avoid the negative effect of such a transfer would be to temporarily assign someone of a lower rank" to the lower-ranking position. [Id.].

Additionally, Mr. Rukavina states that he reviewed an unsigned letter written by Chief Burnette at the time of the Plaintiff's transfer in June of 2019

5

outlining alleged deficiencies in the Plaintiff's performance as a Division Chief. [Id.]. Mr. Rukavina concludes that if the alleged deficiencies existed and if the department was competently managed, then it would be customary for there to be an extensive written record of the Plaintiff's alleged deficiencies. [Id.]. Mr. Rukavina further concludes that the letter did not contain specific examples of the Plaintiff's alleged performance deficiencies, and "if the Asheville Fire Department was being managed in a competent, professional and fair manner, such specific examples would be included…." [Id. at 3].

Mr. Rukavina's opinion that the Plaintiff's transfer was a "negative and adverse employment action," [id. at 2], is nothing more than a restatement of the legal standard the Plaintiff must satisfy to establish a sex discrimination claim under Title VII. Under Title VII, an employee who claims that she was the subject of unlawful discrimination "must show that she suffered some type of adverse employment action." Ali v. Alamo Rent-A-Car, Inc., 8 F. App'x 156, 157 (4th Cir. 2001). "The adverse employment action requirement is derived from the statute's requirement that the employer's practice relate to 'compensation, terms, conditions, or privileges of employment' or that the practice 'deprive any individual of employment opportunities or otherwise adversely affect his status as an employee.'" Id.

6

at 158 (quoting 42 U.S.C. § 2000e-2(a)(1) & (2)).  An adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998)).  Significantly, there is nothing about the adverse employment action requirement that requires the assistance of an expert to understand.  A jury could readily assess the evidence regarding the Plaintiff's transfer and determine for themselves whether the Plaintiff was subject to an adverse employment action.  Expert testimony should be admissible only if it could "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  The Court fails to see how Mr. Rukavina's opinion that the Plaintiff was subject to a "negative and adverse employment action" would be helpful to the jury.

Further, Mr. Rukavina's deposition testimony calls into question whether he is qualified, as an expert, to deliver the opinions contained in his report and whether his opinions are based on sufficient facts and data.  In his deposition testimony, Mr. Rukavina admitted that he does not consider himself an expert in personnel management and, instead, speculated that an

7

expert in personnel management would find that it is "inappropriate for a supervisor to make a generalized comment about someone's performance and not offer any specific examples, particularly when they're requested." [Rukavina Dep., Doc. 20-2, at 176].

In his report, Mr. Rukavina also notes that he reviewed the standard operating guidelines and organizational charts of the AFD, the facts alleged by the Plaintiff in her Amended Complaint, and the unsigned letter written by Chief Burnette in June of 2019. [Rukavina Report, Doc. 24-1 at 3]. However, when asked whether he reviewed other standard operating guidelines outside of the AFD, Mr. Rukavina testified that he did "[n]ot in connection with this case," but he was "familiar with a number of them simply because of the nature of [his] work." [Rukavina Dep., Doc. 20-2, at 208]. Mr. Rukavina also testified that he did not ask any other employees at the AFD about the Plaintiff's performance as Division Chief supervising the department's A-Shift or whether they considered the Plaintiff's transfer to be a demotion. [Id. at 206]. When questioned about whether he conducted any other research before he formed his opinion that the Plaintiff was effectively demoted, Mr. Rukavina again implied that he was not an expert, testifying as follows:

> Q: Other than your own experience and what you've learned from Chief Ponder, did you do any other research to assist in rendering your opinion that Chief Ponder was functionally demoted?

8

> **A: No. I thought about doing some research on recognized personnel practices, but decided that when the appropriate time came, there were a number of people that would make [a] far more credible witness than I would.**

[Id. at 207-08] (emphasis added).

The Plaintiff attempts to overcome Mr. Rukavina's own statements that he is not an expert by arguing that "Mr. Rukavina is offered to the court as an expert in the area of professional and competent management of municipal Fire Departments" and not "as an expert in personnel law or personnel management practices generally." [Doc. 24 at 2-3]. However, the Plaintiff's argument ignores the fact that Mr. Rukavina *has* offered opinions regarding personnel management practices, such as the proper method for documenting issues related to employee performance. [See Rukavina Report, Doc. 24-1 at 2-3].

Mr. Rukavina's deposition testimony also undermines the reliability of his opinions specifically as they relate to the management of municipal fire departments. Rule 702 contemplates that a witness may form an expert opinion based on his experience if that experience is "reliably applied to the facts." Wilson, 484 F.3d at 274. Here, however, Mr. Rukavina repeatedly acknowledged that other individuals with knowledge of fire department management may reach different conclusions. For example, when asked

9

again how he concluded that the Plaintiff was effectively demoted, Mr. Rukavina testified as follows:

> Q: [Y]ou state that Chief Ponder's position was inferior to that of a division chief. How is Chief Ponder's new position inferior to a division chief?
>
> A: I couldn't find anything comparable in what I could gather about division chief responsibilities that would lead me to the conclusion that it's comparable. I'm looking at it. I'm seeing somebody in charge of operations on each shift. Somebody in charge of fire prevention and code enforcement. I think there's a note on there somebody in charge of something else. And being in charge of the strategic plan doesn't line up with any of those. Actually, that's a matter of opinion. But it is a matter of opinion, not a matter of fact, and my opinion is what I have offered here.
>
> Q: Is there any way for me to go out and verify the accuracy of that opinion?
>
> A: . . . I'll put it to you this way: **Is there an independent body of standards for what falls under these classifications? There is not.** So my longer answer is no, because the answer would vary according to who you talk to. . . . **[I]s there some[one] out there that can come down and say, Chief Rukavina is right and Chief Burnette is wrong? Not that I'm aware of.** Not the National Fire Academy, or the US Fire Administration, or the National Fire Protection Association, or anyone else.

[Rukavina Dep., Doc. 20-2, at 224-25] (emphasis added). Mr. Rukavina then continued, testifying that he "use[d] [his] own judgment" to conclude that the Plaintiff's transfer was functionally a demotion but that "[t]here is no

10

Case 1:20-cv-00330-MR   Document 31   Filed 03/07/22   Page 10 of 12

independent methodology" for reaching that conclusion.  [Id. at 226].  Instead, Mr. Rukavina testified that such conclusions are reached "on a case-by-case basis.  So *in some departments, [his] statement would be accurate.  In some departments perhaps Chief Burnette's would*."  [Id.] (emphasis added).

The Court concludes that Mr. Rukavina's opinion that the Plaintiff was subject to a "negative and adverse employment action" is a legal conclusion that would not be helpful to the jury.  Further, because Mr. Rukavina acknowledged that there are no uniform standards for classifying various jobs in a fire department and that he is not an expert in personnel management, the Court also concludes that there is no reliable foundation for Mr. Rukavina's opinions that the Plaintiff was functionally demoted and that there would be documentation or specific examples of her alleged performance deficiencies if those deficiencies existed.  For all these reasons, the opinions offered in Mr. Rukavina's report and deposition testimony fail to meet the standards of Rule 702, and they must be excluded.

11

Case 1:20-cv-00330-MR   Document 31   Filed 03/07/22   Page 11 of 12

**ORDER**

**IT IS, THEREFORE, ORDERED** that the "Defendants' Motion in Limine to Exclude Expert Opinion and Testimony of John D. Rukavina" [Doc. 20] is **GRANTED.**

**IT IS SO ORDERED.**

Signed: March 7, 2022

Martin Reidinger
Chief United States District Judge